**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **JOSEPH GUERRIERI,**<br><br>    **Plaintiff,**<br><br>  v.<br><br>**METRA and NATIONAL RAILROAD PASSENGER CORPORATION,**<br><br>    **Defendants.** | **Case No. 06 C 2456**<br><br>**Hon. Harry D. Leinenweber** |

### MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Guerrieri (hereinafter, "Guerrieri" or "Plaintiff") brings this action against Defendants Northeast Illinois Regional Commuter Railroad Corporation (hereinafter, "Metra") and the National Railroad Passenger Corporation (hereinafter, "Amtrak") pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60.

Plaintiff alleges that while working within the scope of his employment for Defendants, he was exposed to cumulative trauma to his hip, which ultimately resulted in hip replacement surgery. Plaintiff alleges that Defendants' negligence caused his injuries, and that this negligence consisted in, among other things, failing to provide a safe workplace, failing to warn of risks of repetitive trauma, failing to provide an adequate ergonomics program, failing to periodically test employees such as Plaintiff for repetitive

trauma, and failing to promulgate safety rules or provide protective equipment. *See* Compl. ¶ 13.

Defendants Metra and Amtrak have filed separate Motions for Summary Judgment. Plaintiff has opposed the motions and submitted (after the Court's discovery deadline of May 7, 2007) an expert report and letter in support. For the following reasons, Defendants' Motions for Summary Judgment are **GRANTED**.

## I. BACKGROUND

As an initial matter, Plaintiff's counsel's Local Rule 56.1(b)(3) statements fail to comply with the rule's requirement that the response contain "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(B). Plaintiff's counsel has also failed to include in his Statement of Facts "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(C). Instead, counsel has simply reproduced within the body of his memorandum of law opposing Metra's motion for summary judgment over a dozen pages of Guerrieri's deposition. In his memorandum of law opposing Amtrak's motion for summary judgment, Plaintiff's counsel has reproduced portions of Plaintiff's deposition and portions of his expert report.

In this Court, "Rule 56.1(b)(3)(B) 'provides the *only* acceptable means of . . . presenting additional facts.'" *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (quoting *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995)) (emphasis in *Malec*). Thus, the Court sets forth only the undisputed facts culled from Defendants' Local Rule 56.1(a)(3) statements, which are either admitted by Plaintiff in his Local Rule 56.1(b)(3) statement or deemed admitted due to Plaintiff's failure to controvert them. (Even were the Court to consider the additional facts presented in Plaintiff's memorandum opposing Metra's motion for summary judgment, Defendants would still be entitled to summary judgment. *See infra* pp. 9-11.)

Guerrieri is currently a Metra employee who worked full-time as an electrician for Amtrak from August 1990 until October 14, 1996, when he began working full-time as an electrician for Metra. While employed by Amtrak, Guerrieri worked on passenger railroad cars at Amtrak's 14th Street maintenance facility and its Brighton Park facility. The majority of Guerrieri's work at Amtrak consisted of working on refrigeration units on the single level dining cars, where he would sit on a stool alongside the car as the units were located on the outside of the cars. On the Superliner cars, Guerrieri would work inside the galley while standing straight on a five-foot step ladder, facing his work and not twisted in an awkward position. The heaviest item that Guerrieri

had to lift while working on refrigeration units at Amtrak's Brighton Park facility was a 30-pound jug of Freon. At the 14th Street maintenance facility, Guerrieri performed "yard cuts," the process of disconnecting the cables that join the railroad cars and separating the cars from each other. While doing yard cuts, Guerrieri did not have to climb up into any of the cars; instead, he stood at ground level, either on the platforms or on ballast.

Working on refrigeration units was a one-person job, for which Guerrieri did not need anyone else's help. When Guerrieri asked for help in doing his job at Amtrak, he was never denied help. There was no equipment Guerrieri thought he needed that he did not have. Guerrieri never made any complaints to his supervisors at Amtrak that his job was too hard for him. Guerrieri does not recollect anything about his job at Amtrak that he felt was unsafe. He never felt pain or discomfort in his hip while working at Amtrak.

Guerrieri began working for Metra at its Western Avenue facility on October 14, 1996. His job duties included performing yard cuts, separating the cars, connecting and disconnecting cables between the cars, hooking up ground power to the train, inspecting the rail cars to ensure that the heating and electrical systems were in proper working condition, and repairing any electrical defects discovered.

Guerrieri first recalled experiencing extreme pain in his hip in 2004.  He saw his primary care physician, Dr. Winiecki, who referred him to Dr. Karlsson for further evaluation of his hip.  On or about July 27, 2004, Guerrieri saw Dr. Karlsson, who dictated a note stating that he "has limitations in activities of daily living and has had problems with work.  It has gradually been getting worse over the last couple of years."  Metra's Statement of Facts ¶ 23.  Guerrieri does not recall whether Dr. Karlsson expressed an opinion as to whether his hip problems had anything to do with his employment.  Guerrieri underwent a hip replacement surgery in October 2004 and remained on crutches for three months afterwards.  He returned to work on March 1, 2005.  During his medical leave of absence from employment at Metra, Guerrieri did not think that his hip injuries were caused by or related to his employment. *Id.* ¶ 28.

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must view all the evidence and any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e).

### III. <u>DISCUSSION</u>

**A. The Federal Employers' Liability Act ("FELA")**

Under FELA, railroads are liable in damages to employees who suffer injury due to their negligence. 45 U.S.C. § 51 (2007). "The test of a jury case under the FELA 'is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest*, in producing the injury . . . for which damages are sought.'" *Fulk v. Illinois Cent. R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994) (quoting *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506 (1957)) (emphasis in *Fulk*). Although FELA is a broad remedial statute, plaintiffs must still prove the common law elements of negligence, including duty, breach, foreseeability, and causation. *Id.*; *see also Coffey v. Northeast Illinois Regional Commuter R. Corp.*, 479 F.3d 472, 476

(7th Cir. 2007); *see also Zarecki v. National R.R. Passenger Corp.*, 914 F.Supp. 1566, 1571 (N.D. Ill. 1996).

**B. Plaintiff's Expert Report and Letter Are Inadmissible**

The Court set a May 7, 2007 deadline for Plaintiff to file expert reports. On October 16, 2007, the Court granted Plaintiff's motion for leave to file late his expert disclosures, which consists of a report from an ergonomic expert, Dr. Michael Shinnick, and a letter from Dr. Howard Freedberg. These documents are not admissible evidence that may be considered by the Court in deciding Defendants' motions for summary judgment.

First, neither the report from Dr. Schinnick nor the letter from Dr. Freedberg are sworn. The Court will not consider unsworn reports or letters in deciding a motion for summary judgment. *Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003) (holding that an expert report that "was introduced into the record without any supporting affidavit verifying its authenticity . . . is therefore inadmissible and cannot be considered for purposes of summary judgment."); FED. R. CIV. P. 56(c), (e).

Second, Dr. Freedberg's letter does not satisfy Federal Rule of Civil Procedure 56(e) because it does not set forth the facts or reasoning used in making its conclusion and thus "amount[s] to nothing more than a denial of the adverse party's pleading." *Zarecki*, 914 F.Supp. at 1574. Dr. Freedberg opines in his two-page letter:

> It is my opinion that the repetitively applied excessive force, pulling, pushing along with extreme heavy lifting, constant bending, twisting, squatting, kneeling and doing awkward postures or positions are culpable in the acceleration of the degenerative change requiring the total hip arthroplasty.

Freedberg Ltr. at 1. This opinion is based on (a) one visit with Guerrieri on June 1, 2005, (b) Dr. Freedberg's review of Guerrieri's medical records, which consisted of his hip surgery and rehabilitation program, and (c) review of Guerrieri's "job analysis," contained in a letter that Guerrieri's attorney sent to Dr. Freedberg describing Guerrieri's work "for 15 plus years at his job as a railroad electrician." *Id.* Like the expert report found inadmissible in *Zarecki*, Dr. Freedberg's letter:

> gives a bottom line opinion . . . but provides no explanation of the facts or reasoning used in formulating that opinion. He merely states that his conclusion is based on his examination of [plaintiff], h[is] medical records, and his professional experience. The Court is left in [the] dark as to what facts he derived from [plaintiff]'s examination and medical records, or the reasoning used to conclude that [plaintiff]'s work duties caused h[is] injury.

*Zarecki*, 914 F.Supp. at 1574-75.

Third, Dr. Freedberg's letter does not satisfy Federal Rule of Evidence 702. *See* FED. R. EVID. 702 ("If scientific . . . knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or

otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The letter does not describe (nor does the record elsewhere indicate) what "job analysis" led to Dr. Freedberg's conclusion – or whether the "job analysis" pertained to Guerrieri's work at Metra or Amtrak or both; it does not indicate whether Dr. Freedberg conducted any studies or analyses to support his view or indicate what scientific method he used to reach his conclusion; nor does it indicate how any scientific principles or methods were applied to Guerrieri's case. *See Zarecki*, 914 F.Supp. at 1573-74 (finding a similarly conclusory expert affidavit inadmissible under FED. R. EVID. 702).

## C. Plaintiff Has Provided No Evidence of Causation

Defendants Amtrak and Metra argue that Guerrieri has not provided evidence of any of the elements of negligence, including breach of duty, foreseeability, and causation. The Court will address only the causation issue, since it is dispositive.

"Expert testimony usually is necessary to establish a causal connection between an injury and its source 'unless the connection is a kind that would be obvious to laymen,'" *Simpson v. Northeast Illinois Regional Commuter R.R. Corp.*, 957 F.Supp. 136, 138 (N.D. Ill. 1997) (citation omitted). The causal relationship between

performing yard cuts, walking on ballast, or doing other electrical repairs on railroad cars and Guerrieri's hip injury is not obvious to laymen. Without expert testimony, Guerreri cannot establish that his hip condition was caused by his job duties at Amtrak or Metra.

The only evidence that Guerrieri has provided to show causation is Dr. Freedberg's letter. (Dr. Schinnick's report concludes only that Amtrak and Metra failed to provide a safe work environment by not implementing certain ergonomic programs.) As discussed above, Dr. Freedberg's letter is not admissible evidence. Even if it were admissible, it does not show a causal relationship between Guerrieri's hip condition and his work duties. The letter provides no reasoning or explanation whatsoever regarding how "the injuries were culpably connected to the work environment." Freedberg Ltr. at 1.

The Court notes that Guerrieri's job duties at Metra apparently required more repetitively applied force, pulling, lifting heavy objects, bending in awkward positions, etc., than his work at Amtrak. *See* Pl.'s Dep. at 81-83 (pulling and pushing hard to disconnect power), 88-94 (replacing blower bearing assemblies, which weighed more than 60 pounds), 98-104 (lifting a condenser fan motor, which weighed 87.9 pounds), 105-07 (lying on back underneath cars while bending upwards at a 45-degree angle to change cables), 109-11 (stooping in an electrical locker). Guerrieri argues that

these facts, along with Dr. Schinnick's report, constitute evidence that his work at Metra was unsafe.  *See* Pl.'s Mem. in Opposition to Metra's Mot. at 22.  Even if this were so - and the Court doubts that it is - Guerrieri has failed to establish the element of causation.

### IV. CONCLUSION

For the reasons stated herein, the Motions for Summary Judgment of Defendants Amtrak and Metra are **GRANTED**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 10/29/2007